UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

JEPRECE ROUSSELL

VERSUS

PBF CONSULTANTS, LLC, ET AL.

CIVIL ACTION

NO. 18-899-JWD-EWD

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on April 15, 2019.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

JEPRECE ROUSSELL

VERSUS

PBF CONSULTANTS, LLC, ET AL.

CIVIL ACTION

NO. 18-899-JWD-EWD

**REPORT AND RECOMMENDATION**

Before the Court is a Motion to Remand[1] filed by Jeprece Roussell ("Plaintiff"), proceeding on behalf of and as tutrix for S.C.R., the minor child of decedent Kierston Roussell ("Decedent"). The Motion to Remand is opposed by defendants, PBF Holding Company, LLC ("PBF Holding"), PBFX Operating Company, LLC ("PBFX Operating"), Chalmette Refining, LLC, John Sprafka ("Sprafka"), and Wayne LaCombe ("LaCombe").[2]  Plaintiff has filed a Reply.[3]

For the reasons set forth herein, the undersigned **RECOMMENDS**[4] that the Motion to Remand[5] be **DENIED** and that the claims against Sprafka, LaCombe, PBF Consultants, LLC ("PBF Consultants"), and PBF Investments, LLC ("PBF Investments"), be **DISMISSED WITHOUT PREJUDICE**.

In the event this recommendation is adopted, the undersigned **FURTHER RECOMMENDS** that this matter be referred to the undersigned for a scheduling conference.[6]

---

[1] R. Doc. 12.

[2] R. Doc. 15.

[3] R. Doc. 24.

[4] The Fifth Circuit has held that "a motion to remand is a dispositive matter on which a magistrate judge should enter a recommendation to the district court subject to de novo review."  *Davidson v. Georgia-Pacific, LLC*, 819 F.3d 758, 765 (5th Cir. 2016).

[5] R. Doc. 12.

[6] The previously set scheduling conference was canceled to allow resolution of the Motion to Remand.  *See*, R. Doc. 13.

1

I.      **Background**

On August 10, 2018, Plaintiff filed a Petition for Wrongful Death and Survival Action (the "Petition") against the following defendants: (1) PBF Holding; (2) PBFX Operating; (3) Chalmette Refining, LLC (collectively, the "PBF Entity Defendants"); (4) Sprafka; (5) LaCombe (collectively, the "PBF Individual Defendants"); (6) Clean Harbors, Inc.; (7) Clean Harbors Environmental Services, Inc. (collectively, the "Clean Harbors Defendants"); (8) PBF Consultants; and (9) PBF Investments.  Per the Petition, Plaintiff alleges that on March 31, 2018 Decedent sustained injuries which ultimately led to his death while working for the Clean Harbors Defendants.[7]  Plaintiff alleges that the Clean Harbors Defendants "were hired by the PBF Defendants [which Plaintiff defines in the Petition as PBF Consultants, PBF Investments, PBFX Operating, and Chalmette Refining, LLC] to perform waste management and cleaning services at the PBF Chalmette Refinery" and that Decedent was tasked with cleaning sand tanks at the Chalmette Refinery.  Plaintiff alleges that while cleaning a sand tank, silica from the tank "fell off the walls and buried [Decedent] and his coworker in four to five feet of debris."[8]  Plaintiff further alleges that as a result of the falling silica, Decedent's "respirator was knocked off" and Decedent was unable to breathe under the silica for an extended period of time, leading to Decedent's placement on a ventilator for almost two weeks until he was "eventually taken off of life support."[9]

On October 10, 2018, the PBF Entity Defendants and the PBF Individual Defendants (collectively, the "PBF Defendants") filed a Notice of Removal pursuant to 28 U.S.C. § 1332 based on the assertion that the amount in controversy exceeds $75,000 exclusive of interest and costs and that the properly joined parties are completely diverse.[10]  Although Plaintiff and the PBF

---

[7] R. Doc. 1-1, p. 5, ¶ 17.

[8] R. Doc. 1-1, p. 6, ¶ 18.

[9] R. Doc. 1-1, p. 6, ¶ 19.

[10] R. Doc. 1. With respect to the amount in controversy, Plaintiff alleges in the Petition that "Plaintiff seeks damages far in excess of $75,000."  R. Doc. 1-1, p. 4, ¶ 4.  In order to correct deficient allegations of citizenship, the PBF

2

Individual Defendants are each alleged to be citizens of Louisiana,[11] the PBF Defendants contend that Sprafka and LaCombe are improperly joined because there is no possibility that Plaintiff can establish a cause of action against them in their managerial roles under Louisiana law.[12] With respect to PBF Consultants and PBF Investments, the PBF Defendants assert that these two defendants "are unknown" to the PBF Defendants, are not related to or affiliated with the PBF Defendants, have no ownership interest or involvement with the Chalmette Refinery, and "were joined solely because their names include 'PBF.'"[13] If either Sprafka, LaCombe, PBF Consultants, or PBF Investments is properly joined, then, as a citizen of Louisiana, that defendant's presence in this action precludes removal and the Motion to Remand should be granted.[14]

## II.  Law and Analysis

### A. Standard for Improper Joinder

---

Defendants' filed a Motion to Substitute their Notice of Removal which was granted on October 30, 2018. *See*, R. Docs. 8 & 11. Thereafter, the PBF Defendants filed an Amended Notice of Removal to complete their citizenship allegations. R. Doc. 19. Plaintiff's Motion to Remand was filed prior to the Amended Notice of Removal and Plaintiff argues, *inter alia*, that remand is appropriate because the PBF Defendants failed to adequately allege the citizenship of Stonerise 2 Holding Limited Partnership (which is a member of certain defendants). *See*, R. Doc. 12-1, pp. 15-16. In the Amended Notice of Removal, the PBF Defendants adequately allege the citizenship of all parties (including the members of Stonerise 2 Holding Limited Partnership). The undersigned finds that the Amended Notice of Removal moots Plaintiff's argument that the case should be remanded because the PBF Defendants failed to establish the citizenship of all parties. *See*, 28 U.S.C. § 1653 ("Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts.").

[11] Plaintiff alleges in her Petition that she is the mother and tutrix of S.C.R. and that she "resides and is domiciled in Louisiana." R. Doc. 1-1, p. 4, ¶ 7. This Court has previously explained that "'[s]ince most minors are legally incapable of forming the requisite intent to establish a domicile, their domicile is determined by that of their parents'" and that "'[w]hen determining a minor's domicile, courts look to the domicile of the minor's guardian if the minor lives with her guardian.'" *Champagne v. Parrish*, Civil Action No. 16-610, 2016 WL 7031331, at * 3 (M.D. La. Nov. 7, 2016) (internal citations omitted). Louisiana Civil Code article 41 provides that "[t]he domicile of an unemancipated minor under tutorship is that of his tutor. In case of joint tutorship, the domicile of the minor is that of the tutor with whom the minor usually resides, unless the court directs otherwise." Here, because Plaintiff has alleged that she is the tutrix of S.C.R., and that she is domiciled in Louisiana, the undersigned finds that the record contains sufficient allegations of Plaintiff's Louisiana citizenship. With respect to Sprafka and LaCombe, the PBF Defendants assert in their Notice of Removal that both "are domiciled in and citizens of the State of Louisiana." R. Doc. 19, p. 3.

[12] R. Doc. 19, pp. 5-7.

[13] R. Doc. 19, p. 7. The PBF Defendants assert that "[t]he sole member of both PBF Consultants, LLC and PBF Investments, LLC is Peyton Farr. At the time of commencement of the state court action, at the time of removal, and at present, Farr was and is domiciled in and a citizen of the State of Louisiana." R. Doc. 19, p. 4. The PBF Defendants refer to PBF Consultants, LLC and PBF Investments, LLC collectively as the "Farr Entities" in their opposition to the Motion to Remand. R. Doc. 15, p. 1.

[14] 28 U.S.C. §1441(b)(2).

3

"The party seeking removal bears a heavy burden of proving that the joinder of the in-state party was improper."[15] "'[A]ny contested issues of fact and any ambiguities of state law must be resolved' in favor of remand,"[16] and "[a]ny doubts regarding whether removal jurisdiction is proper should be resolved against federal jurisdiction."[17]

The Fifth Circuit has "recognized two ways to establish improper joinder: '(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.'"[18] As to the second method, the test "is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant."[19] The PBF Defendants do not assert that there has been fraud in the pleading of jurisdictional facts related to any non-diverse defendant. Accordingly, the undersigned considers whether there is a reasonable basis to predict that Plaintiff might be able to recover against the non-diverse defendants.

A court may resolve the issue of whether a plaintiff has a reasonable basis of recovery under state law in one of two ways. "The court may conduct a Rule 12(b)(6) analysis, looking at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant. Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there

---

[15] *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 574 (5th Cir. 2004).

[16] *African Methodist Episcopal Church v. Lucien*, 756 F.3d 788, 793 (5th Cir. 2014) (quoting *Cuevas v. BAC Home Loans Servicing, LP*, 648 F.3d 242. 249 (5th Cir. 2011)). *See also*, *Travis v. Irby*, 326 F.3d 644, 649 (5th Cir. 2003) ("Any contested issues of fact and any ambiguities of state law must be resolved in [plaintiff's] favor. The burden of persuasion on those who claim fraudulent joinder is a heavy one.").

[17] *Bartel v. Alcoa Steamship Co.*, 64 F.Supp.3d 843, 847 (M.D. La. 2014) (citing *Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 339 (5th Cir. 2000)).

[18] *Smallwood v. Central Railroad Co.,* 385 F.3d 568, 573 (5th Cir. 2004) (quoting *Travis v. Irby*, 326 F.3d 644, 646-47 (5th Cir. 2003)).

[19] *Id*.

4

is no improper joinder. That said, there are cases, hopefully few in number, in which a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder. In such cases, the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry."[20] The Fifth Circuit has cautioned that such summary inquiry "is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant."[21]

### B. Individual Liability of Sprafka and LaCombe Under *Canter*

"When a case is removed to federal court on the basis of diversity jurisdiction, the *Erie* doctrine requires federal courts to apply substantive state law when adjudicating state law claims."[22] "Under Louisiana law, a court may hold a corporate officer or employee individually liable for injuries to third persons under certain circumstances."[23] "This 'liability may be imposed on such individuals even if the duty breached arises solely from the employment relationship.'"[24] "If the elements for imposing individual liability on the corporate employee are met, it does not matter that the corporation might also be liable."[25] Conversely, when considering the sufficiency of allegations purporting to state a claim for an individual employee's personal liability, "[t]he

---

[20] *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004).

[21] *Id*. at 573-74. *See also*, *id*. at n. 12 ("For example, the in-state doctor defendant did not treat the plaintiff patient, the in-state pharmacist defendant did not fill a prescription for the plaintiff patient, a party's residence was not as alleged, or any other fact that easily can be disproved if not true."). *See also*, *African Methodist Episcopal Church v. Lucien*, 756 F.3d 788, 793 (5th Cir. 2014) ("A mere theoretical possibility of recovery in state court will not preclude a finding of improper joinder. The federal court's inquiry into the reasonable basis for the plaintiff's state court recovery is a 'Rule 12(b)(6)-type analysis,' although the court retains discretion to pierce the pleadings and conduct summary proceedings….").

[22] *RPM Pizza, LLC v. Argonaut Great Cent. Ins. Co.*, 2013 WL 1296678, at * 2 (M.D. La. March 28, 2013) (citing *LeMeilleur v. Monumental Life Ins. Co.*, 419 Fed. Appx. 451, 453 (5th Cir. 2011) & *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)).

[23] *Kemp v. CTL Distribution, Inc.*, 440 Fed. Appx. 240, 245 (5th Cir. 2011) (unpubl.) (citing *Canter v. Koehring*, 283 So. 2d 716 (La. 1973)).

[24] *Id*. (citing *Guillory v. PPG Industries, Inc.*, 434 F.3d 303, 312 (5th Cir. 2005) and *Ford v. Elsbury*, 32 F.3d 931, 936 (5th Cir. 1994)).

[25] *Ford*, 32 F.3d at 936 (citing *H.B. 'Buster' Hughes, Inc. v. Bernard*, 318 So.2d 9, 12 (La. 1975)).

5

Court is only concerned…[with] whether a viable claim may be made against [the defendant employee] personally and not whether [the employer] may be held vicariously liable for the action of its employees."[26] As explained by the Fifth Circuit, "[v]icarious liability is not a revolving door. In certain situations, an employer may be held liable for the negligent acts of its employees…but *Canter* does not attach liability to a managerial employee absent breach of a duty personally owed by the employee to third parties."[27]

"Under Louisiana law, an employee is personally liable if (1) the employer owes a duty of care to a third person; (2) the employer delegated that duty to a defendant-employee; (3) and the defendant-employee breached the duty through his own fault and lack of ordinary care."[28] "However, a defendant-employee's 'general administrative responsibility' is insufficient to impose personal liability."[29] "In order for a corporate officer to be held liable for purported personal fault or negligence which arises out of a breach of duty, that person must have some personal contact with and responsibility towards the injured employee."[30] "A supervisor's knowledge of the dangers present 'could give rise to the personal duty contemplated in *Canter*.'"[31]

---

[26] *Hornsby v. AlliedSignal, Inc.*, Civil Action No. 96-3347, 961 F.Supp. 923, 930 (M.D. La. Jan 15, 1997). *See also*, *Haynes v. Healthcare Services Group, Inc.*, Civil Action No. 13-649, 2014 WL 2769080, at * 2 (M.D. La. May 30, 2014) ("To begin, vicarious and personal liability are not antithetical. 'If the elements for imposing liability on the corporate employee are met, it does not matter that the corporation might also be [vicariously] liable.' *Ford*, 32 F.3d at 936.

[27] *Anderson v. Georgia Gulf Lake Charles, LLC*, 342 Fed. Appx. 911, 918-19 (5th Cir. 2009).

[28] *Moore v. Manns*, 732 F.3d 454, 456-57 (5th Cir. 2013) (citing *Canter v. Koehring*, 283 So. 2d 716, 721 (La. 1973), *superseded on other grounds by statute,* La. R.S. § 23.1032 (1998)).

[29] *Id.* (affirming district court's denial of motion to amend to add non-diverse employees and agreeing that plaintiff's "proffered amendment relied on the proposed parties' general responsibilities to oversee safety rather than on evidence of personal fault, as required to trigger individual liability under Louisiana law.").

[30] *Esco v. Smith*, 468 So.2d 1169, 1175 (La. 1985). *See also*, *Canter*, 283 So. 2d at 721 ("personal liability cannot be imposed upon the…employee simply because of his general administrative responsibility for performance of some function of the employment. He must have a personal duty towards the injured plaintiff, breach of which specifically has caused the plaintiff's damages.").

[31] *Ford*, 32 F.3d at 939 (non-diverse plant manager properly joined in suit arising out of reactor explosion at a fertilizer plant where conflicting affidavits, viewed in a light most favorable to plaintiffs, raised a question of whether the plant manager had actual knowledge of a leak in the reactor prior to the explosion).

Per the Petition, Plaintiff alleges that prior to Decedent beginning his work at the Chalmette Refinery, "employees of the Chalmette Refinery walked through the tanks and negligently gave the Clean Harbors Defendants the permits to allow Clean Harbors workers, including Mr. Roussell, access to the tanks for them to be cleaned."[32] Plaintiff alleges that "[a]t the time of the incident Defendant John Sprafka was the operations manager for the Chalmette Refinery, and Defendant Wayne LaCombe was the Safety and Health Supervisor for the Chalmette Refinery."[33] Plaintiff further generally alleges that "Defendants" (presumably, the PBF Entity Defendants, the PBF Individual Defendants, the Clean Harbors Defendants, PBF Consultants and PBF Investments, collectively) were negligent for the following reasons:

> (a) Unsafe work practices relating to giving permits for Clean Harbors workers to access and clean sand tanks;
>
> (b) Unsafe work practices relating to material handling – specifically relating to the cleaning of the silica from the sand tanks at the Chalmette Refinery;
>
> (c) Improper and inadequate training related to material handling – specifically relating to the cleaning of the silica from the sand tanks at the Chalmette Refinery;
>
> (d) Lack of safe and adequate materials and equipment for the safe cleaning of the sand tanks at the Chalmette Refinery;
>
> (e) Unsafe design and configuration [of] the sand tanks at the Chalmette Refinery;
>
> (f) Unsafe and/or…lack of safe managerial policies, procedures, and training relating to the cleaning of silica from the sand tanks at the Chalmette Refinery;
>
> (g) Unsafe and inadequate supervision, including but not limited to supervision by Defendants' managers, supervisors, and employees – including specifically Defendant John Sprafka as the Operations Manager for the refinery and Defendant Wayne LaCombe as the Safety and Health Supervisory for the refinery;

---

[32] R. Doc. 1-1, ¶ 18.

[33] R. Doc. 1-1, ¶ 18.

7

>(h) Failure to provide adequate safety equipment;
>
>(i) Failure to provide a safe working environment;
>
>(j) Instructing Clean Harbors workers to perform work in an unsafe manner; and
>
>(k) Failure to warn Mr. Roussell of hidden dangers.[34]

Additionally, Plaintiff alleges that:

>the incident sued hereupon was substantially certain to occur. The dangerous nature and manner of work being performed made it substantially certain that silica would collapse onto and bury Mr. Roussell. Further, Defendants – owners and/or operators of the Chalmette Refinery, and contractors experienced in plant cleaning and servicing work – knew of the substantial dangers with sending Mr. Roussell into the highly dangerous sand tanks and knew that an incident of this sort was substantially certain to occur yet proceeded nevertheless.[35]

The undersigned finds that the above allegations fail to state a claim against either PBF Individual Defendant for personal liability. Plaintiff does not allege that either Sprafka or LaCombe personally walked through the tanks with Decedent, provided Decedent with a permit to access the tanks, or provided any instructions to Decedent. Plaintiff does not allege that either Sprafka or LaCombe was personally responsible for inspecting the tanks or for supervising Clean Harbor's work. Instead, Plaintiff collectively refers to "Defendants" and asserts generally that all Defendants were negligent for their failure to ensure a safe working environment and provide adequate training. The Fifth Circuit has found similar allegations insufficient to state a claim of *Canter* liability.[36] While Plaintiff asserts that Sprafka and LaCombe (as well as other unnamed

---

[34] R. Doc. 1-1, ¶ 23.

[35] R. Doc. 1-1, ¶ 24.

[36] *See*, *Kemp v. CTL Distribution, Inc.*, 440 Fed. Appx. 240, 246 (5th Cir. 2011) (unpubl.) (terminal manager improperly joined where, although plaintiffs alleged that both the terminal owner and non-diverse manager "failed to 'ensure the [garage] around and in which [decedent] worked prevented his exposure to harmful emissions,'" despite the availability of technology, plaintiffs did not allege that the employer delegated such responsibility specifically to the manager. The court concluded that "[w]ithout either knowledge of the dangerous condition, or the possibility that [non-diverse manager] was specifically delegated responsibility of inspecting the trailers for [employer] on a daily basis, Plaintiffs cannot show the existence of a personal duty that was breached…."). *See also*, *Long v. International Paper Co.*, Civil Action No. 1:16-cv-00430, 2016 WL 6301016, at * 2 (W.D. La. Sept. 20, 2016) ("allegations that an

"managers, supervisors, and employees") were negligent for allegedly providing "[u]nsafe and inadequate supervision," this sort of conclusory allegation based on general responsibilities associated with the PBF Individual Defendants' employment is insufficient to state a viable claim under *Canter*.[37] Moreover, although Plaintiff argues that Sprafka and LaCombe's positions "place the individual defendants at the apex of plant and safety management, which under longstanding Louisiana jurisprudence, factually supports a claim that those two owed safety duties in connection with their ultimate responsibility for safe plant operations,"[38] the cases cited by Plaintiff involve managers or employees who not only had safety duties but also had knowledge of the particular dangerous condition.[39]

---

officer had general safety responsibilities are not sufficient."); *Whitehead v. International Paper Co.*, 1:16-cv-00176, 2016 WL 6272456, at 3 (W.D. La. Sept. 29, 2016) ("Plaintiffs do not allege that IP delegated any duty to oversee the catwalk, its conditions, or Whitehead's work there, to Whiteley. Courts routinely hold that similar allegations are insufficient to establish Canter liability.") (collecting cases; citing, *inter alia*, *Kemp*, 440 Fed. Appx. at 246).

[37] *See*, *McKarry v. Dow Chemical Co.*, Civil Action No. 17-556, 2018 WL 2994820, at * 6 (M.D. La. May 11, 2018) ("In the instant case, none of the Plaintiff's claims against DeLacerda satisfy the *Canter* criteria for tort liability. In the Petition, Plaintiff alleges that DeLacerda owed several duties with respect to the hopper car involved in Plaintiff's accident, including a duty to train, instruct and supervise their employees in the inspection and periodic maintenance and repair of hopper cars like the one involved in the underlying accident. The performance of these alleged duties, however, would be general responsibility associated with DeLacerda's employment at UTLX Manufacturing, not a duty owed personally by DeLacerda to Plaintiff based on some special or unique relationship. Because the alleged duties of DeLacerda were general administrative responsibilities for the performance of his employment and because Plaintiff has failed to allege any specific personal duties owed by DeLacerda to Plaintiff, Plaintiff has no possibility of recovery against DeLacerda under Louisiana law.") (citing *Ramsay v. Rusnak*, Civ. A. No. 12-614, 2013 WL 4039405, at *6 (M.D. La. Aug. 7, 2013) (concluding that plaintiffs had no possibility of recovery against non-diverse defendant based upon his failure to perform duties that were general responsibilities of his employment); *Jackson v. Syngenta Crop Protection, LLC*, Civ. A. No. 12-581, 2013 WL 3329855, at *3-4 (M.D. La. July 1, 2013) (finding improper joinder of plant nurse and staff industrial hygienist who had general administrative responsibilities to evaluate employees for occupational chemical exposure and owed no personal duty to employees)).

[38] R. Doc. 12-1, pp. 10-11.

[39] *See*, *Lytell v. Hushfield*, 408 So.2d 1344, 1348 (La. 1982) (finding terminal manager, operations manager, and dock foreman who "had full knowledge of the defects in the forklift and did nothing to correct them" "breached the duty owed to plaintiff through their 'personal fault' which was the cause of the accident…."); *Brown v. White*, 430 So.2d 16 (La. 1983) (only executive who was "closely associated with the daily problems the mechanics encountered with the equipment and machinery" and who had received a prior safety complaint regarding the fan system on which plaintiff was working while he was injured could be held personally responsible under *Canter*). Plaintiff also cites *Abram v. EPEC Oil Co.*, 936 So.2d 209 (La. App. 4 Cir. 2006) and *Becnel v. Northop Grumman Ship Systems, Inc.*, No. 2009-C-0982, 2009 WL 5667696 (La. App. 4 Cir. Sept. 28, 2009). Both *Abram* and *Becnel* involved claims arising from asbestos exposure in which the court considered whether certain executive officers could be held liable based on some "direct duty" to provide a safe place to work, including some control over the purchase and availability of equipment and supplies. Setting aside that *Abram* and *Becnel* apparently involved long-term harmful exposure to asbestos, *see*, *infra*, n. 42, Plaintiff here has not alleged Sprafka or LaCombe had control over the purchase and availability of equipment and supplies related to the sand tanks.

9

Similarly, the undersigned finds Plaintiff's allegation of "Defendants'" knowledge based on the "highly dangerous" nature of the sand tank such that an accident was "substantially certain to occur" to be the sort of conclusory allegation that this Court is not required to accept. Plaintiff has not alleged that either Sprafka or LaCombe personally knew of a hazardous condition[40] and the Petition "is devoid of any facts to support the allegations" that Sprafka or LaCombe had knowledge of the hazardous condition posed by the tank prior to Decedent's accident.[41] While Plaintiff cites to cases in which courts in this Circuit have accepted generalized allegations of knowledge for the purpose of stating a claim for personal liability under *Canter*, Plaintiff does not allege that the condition of the tank here existed for years or that Plaintiff is seeking to challenge "broad scale" safety issues separate from the supervision of Decedent's activities on March 31, 2018.[42] Plaintiff has not provided any factual underpinning for her assertion that all Defendants

---

[40] Plaintiff argues that she "has alleged that Sprafka and LaCombe *themselves* implemented unsafe work practices; provided improper and inadequate training; failed to provide a safe workplace; instructed Mr. Roussell and his co-employees to perform their work in an unsafe manner; and knew of the likelihood and magnitude of danger posed by the unsafe silica-removal work yet did nothing to prevent it." R. Doc. 24, p. 2. However, Plaintiff's allegations are directed to all Defendants collectively and are conclusory. While Plaintiff alleges that Defendants failed to warn Decedent "of hidden dangers," Plaintiff also asserts in the alternative that "Defendants – owners and/or operators of the Chalmette Refinery, and contractors experienced in plant cleaning and servicing work – knew of the substantial dangers with sending Mr. Roussell into the highly dangerous sand tanks and knew that an incident of this sort was substantially certain to occur yet proceeded nevertheless." R. Doc. 1-1, ¶ 24. However, Plaintiff does not allege that either Sprafka or LaCombe had the responsibility for knowing the condition of the tank, or that either Sprafka or LaCombe improperly delegated that responsibility to one of their subordinates.

[41] *See*, *Giles v. Wal-Mart Louisiana, LLC*, Civil Action No. 16-2413, 2016 WL 2825778, at * 4 (E.D. La. May 13, 2016) ("Plaintiff does not allege that Jabbia personally knew or actively contributed to any alleged unsafe conditions. Plaintiff's allegation that all Defendants 'had actual or constructive knowledge' of the allegedly dangerous condition on the premises is a conclusory allegation that the Court is not required to accept and it does not amount to an allegation that Jabbia personally knew of the allegedly dangerous hole in the parking lot."); *Gros v. Warren Properties, Inc.*, Civil Action No. 12-2184, 2012 WL 5906724, at * 8 (E.D. La. Nov. 26, 2012) ("Plaintiff makes no allegation that Bodine was personally responsible for the maintenance and repair of the common elements of the condominium. Moreover, although Plaintiff alleges that Warren and its agents knew of the allegedly defective condition of the lighting, this is a conclusory allegation that the court is not required to accept, and it does not amount to an allegation that Bodine personally knew of the allegedly defective condition of the emergency back-up lighting.").

[42] *See*, *Delorimier v. Payless Shoe Source*, Civil Action No. 16-13961, 2016 WL 6518864 (E.D. La. Nov. 3, 2016) (Plaintiff's allegation that store manager had a duty to maintain a safe premises and should have known of a 3-4" height variance in sidewalk that existed for years was sufficient under *Canter*); *Davis v. Omega Refining, LLC*, Civil Action No. 15-518, 2015 WL 3650832 (E.D. La. June 11, 2015) (denying motion to dismiss plant manager in toxic tort case related to operation of oil recycling plant where plant manager testified in deposition that "she was a liaison for the plant with the Louisiana Department of Environmental Quality" and plaintiffs argued they had stated a cause of action against plant manager because "she knowingly allowed the emissions of noxious chemicals and odors into the surrounding communities, and she was designated by Vertex as the 'Responsible Official' with authority to sign

knew of the particular hazard here (such as a previous similar incident or safety complaints).[43] Based on the generalized, conclusory allegations against all Defendants collectively, the undersigned finds that Plaintiff has failed to state a claim against either Sprafka or LaCombe personally.[44] Accordingly, Plaintiff's claims against these the two PBF Individual Defendants, John Sprafka and Wayne LaCombe, should be dismissed without prejudice.[45]

### C. Liability of PBF Consultants or PBF Investments

In her Motion to Remand, Plaintiff asserts that while "the possibility of recovery against Sprafka and Lacomb (sic) is alone sufficient to destroy diversity and mandate remand," the Petition also "shows the possibility of recovery against non-diverse defendants PBF Consultants and PBF

---

forms submitted to the Louisiana Department of Environmental Quality."); *Bryant v. Exxon Mobil Corp.*, Civil Action No. 10-532, 2011 WL 3163147, at * 5 (M.D. La. May 19, 2011) (executive officers who were allegedly delegated responsibility to provide proper supervision and warnings and who allegedly "knew or should have known of the unreasonably dangerous exposures of plaintiff to toxic substances" including asbestos were properly joined; court noted that the allegations involved exposure over a long period of time and implicated "broad scale issues over which defendants are alleged to have had responsibility and which are not sufficiently addressed by defendants' attestations that they were not responsible for supervision of plaintiff's "day-to-day" activities"). *See also*, *Abram v. EPEC Oil Co.*, 936 So.2d 209 (La. App. 4 Cir. 2006) (executive officers held liable suit arising out of occupational exposure to asbestos where each officer "had some direct duty to provide Mr. Abram with a safe place to work and had some control over the purchase and availability of equipment and supplies); *Becnel v .Northop Grumman Ship Systems, Inc.*, No. 2009-C-0982, 2009 WL 5667696 (La. App. 4 Cir. Sept. 28, 2009) (same). *But see*, *Sarradet v. Dow Chemical Co.*, Civil Action No. 14-5, 2014 WL 3513381, at * 8 (M.D. La. July 16, 2014) ("even construing this evidence in favor of the plaintiff's position that Peebles has a duty concerning asbestos safety, the duties described by these documents are at best general administrative responsibilities and duties Peebles owed to all workers he allegedly supervised.").

[43] *See*, *Brown*, 430 So.2d at 26-27. *See also*, *Sarradet v. Dow Chemical Co.*, Civil Action No. 14-00005, 2014 WL 3513381, at * 7 (M.D. La. June 16, 2014) (Plaintiff's allegation that individual defendants "knew it was substantially certain the plaintiff would suffer from an asbestos-related disease" was conclusory and insufficient to recover under the intentional tort exception to workers' compensation law. "Non-specific allegations have been found insufficient to satisfy the "substantial certainty" criterion needed to establish an intentional tort.").

[44] In opposition to the Motion to Remand, the PBF Defendants also assert that "the uncontroverted evidence in the record" supports a finding that Sprafka and LaCombe are improperly joined. *See*, R. Doc. 15, pp. 7-8. In support of that position, the PBF Defendants attach affidavits executed by Sprafka and LaCombe. R. Docs. 15-1 & 15-2. Where a plaintiff's allegations can survive a Rule 12(b)(6) challenge, the district court may, in some circumstances, "'pierce the pleadings and conduct a summary inquiry' before slamming the door on a claim of improper joinder." *Pitman v. Crane Co.*, Civil Action No. 13-83, 2013 WL 1403326, at *3 (E.D. La. April 5, 2013). Here, however, Plaintiff's allegations cannot survive a Rule 12(b)(6)-type analysis, and therefore the undersigned does not consider the "summary-judgment type" evidence submitted by the PBF Defendants.

[45] *See, Montoya v. State Farm Mut. Auto. Ins. Co*., Civ. A. No. 16-00005 (RCL), 2016 WL 5942327, at *3 (W.D. Tex. Oct. 12, 2016) ("When a court determines a nondiverse party was improperly joined to defeat diversity, that party must be dismissed without prejudice.") (citing *Int'l Energy Ventures Mgt., L.L.C. v. United Energy Group, Ltd.*, 818 F.3d 193, 210 (5th Cir. 2016)).

11

Investments…."[46]  In opposition to the Motion to Remand, the PBF Defendants assert that PBF Consultants and PBF Investments "have nothing to do with this incident or the Chalmette Refinery"[47] and attach an affidavit executed by Peyton B. Farr, the sole member of PBF Consultants and PBF Investments (collectively referred to in the affidavit as the "Farr Entities") supporting that position.[48]

On April 8, 2019, Plaintiff filed a Stipulation and Tolling Agreement stating, *inter alia*, that "[b]ased on Mr. Farr's representations, Plaintiff will dismiss her claims against PBF Consultants, LLC and PBF Investments, LLC without prejudice."[49]  The stipulation is signed by both Plaintiff's counsel and counsel for PBF Investments and PBF Consultants.[50]  Based on this stipulation, the undersigned recommends that Plaintiff's claims against PBF Investments and PBF Consultants be dismissed without prejudice.

---

[46] R. Doc. 12-1, p. 14.  Plaintiff groups PBF Consultant and PBF Investments with PBF Holding, PBFX Operating, and Chalmette Refining, LLC as the "PBF Defendants."  R. Doc. 1-1, n. 1.  Plaintiff alleges that the PBF Defendants hired the Clean Harbors Defendants "to perform waste management and cleaning services at the PBF Chalmette Refinery" and that "[u]pon information and belief, at the time of the incident, the Chalmette Refinery was operated and/or managed by PBF Defendants…" R. Doc. 1-1, ¶¶ 17 & 20.  *See also*, R. Doc. 12-1, p. 14 ("Roussell alleges that [PBF Consultants and PBF Investments] were operators and/or managers of the refinery where Mr. Roussell was killed.  This imposes on them duties to provide a safe work environment."); p. 15 ("Ms. Roussell's allegations of negligent conduct by the defendants (such as failing to provide a safe work place) can easily be attributed to PBF Consultants and PBF Investments – defendants whom she alleged operated and/or managed the refinery where Mr. Roussell was killed.").

[47] R. Doc. 15, p. 9.

[48] R. Doc. 15-3.  Mr. Farr attests that PBF Consultants was created in connection with his insurance business, R. Doc. 15-3, ¶ 3, and that PBF Investments was created to "hold interests in two investments – one of which is a small interest in a cookie manufacturing company and the other of which is a minority interest in a home health agency in Louisiana." R. Doc. 15-3, ¶ 4.  Mr. Farr further asserts that neither of the Farr Entities has any "interest in or involvement with the Chalmette Refining, LLC refinery in Chalmette, Louisiana…or its management or operations," R. Doc. 15-3, ¶ 5, that the Farr Entities "are not related to or affiliated with any of [the] PBF Holding Company, LLC, PBFX Operating Company, LLC, or Chalmette Refining, LLC defendants," R. Doc. 15-3, ¶ 6, and that neither Mr. Farr nor either of the Farr Entities has ever worked for or been affiliated with the PBF Entity Defendants. R. Doc. 15-3, ¶¶ 8-9.  Mr. Farr also asserts that neither he nor either Farr Entity has any affiliation or connection with the Clean Harbors Defendants.  R. Doc. 15-3, ¶¶ 12-14.

[49] R. Doc. 25, p. 1, ¶ 2.

[50] R. Doc. 25, p. 2.

12

### III. Conclusion

For the reasons set forth herein, the undersigned **RECOMMENDS** that the Motion to Remand[51] be **DENIED** and that Plaintiff's claims against John Sprafka, Wayne LaCombe, PBF Investments, LLC, and PBF Consultants, LLC, be **DISMISSED WITHOUT PREJUDICE**.

In the event this recommendation is adopted, the undersigned **FURTHER RECOMMENDS** that this matter be referred to the undersigned for a scheduling conference.

Signed in Baton Rouge, Louisiana, on April 15, 2019.

                                          **ERIN WILDER-DOOMES**
                                          **UNITED STATES MAGISTRATE JUDGE**

---

[51] R. Doc. 12.