**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| **JEPRECE ROUSSELL,** | **CIVIL ACTION NO.** |
| **on behalf of and as tutrix for S.C.R., the minor** | |
| **child of decedent Kierston Rousell** | |
| | **18-899-JWD-EWD** |
| **VERSUS** | |
| | |
| **PBF CONSULTANTS, LLC, ET AL.** | |

**NOTICE**

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on September 18, 2020.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**JEPRECE ROUSSELL,**                                    CIVIL ACTION NO.
**on behalf of and as tutrix for S.C.R., the minor**
**child of decedent Kierston Rousell**

                                                        **18-899-JWD-EWD**

**VERSUS**

**PBF CONSULTANTS, LLC, ET AL.**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is Plaintiff's Renewed Motion for Leave to Amend Her Complaint ("Motion for Leave"),[1] filed by Jeprece Roussell ("Plaintiff"), proceeding on behalf of and as tutrix for S.C.R., the minor child of decedent Kierston Roussell ("Decedent"). The Motion for Leave is opposed by defendants, PBF Holding Company, LLC ("PBF Holding"), PBFX Operating Company, LLC ("PBFX Operating"), Chalmette Refining, LLC ("Chalmette Refining") (collectively, the "PBF Defendants").[2] It is also opposed by defendant, Clean Harbors Environmental Services, Inc. ("Clean Harbors").[3] Plaintiff filed a reply memorandum.[4]

Also before the Court are a Motion for Leave to File Amended Answer, filed by the PBF Defendants, and an Opposed Motion for Leave to File Amended Answer, filed by Clean Harbors.[5]

As application of the *Hensgens* factors weigh in favor of granting Plaintiff's Motion for Leave as to the claims against non-diverse defendant, Guy Swinford ("Swinford"), it is recommended[6] that the motion be granted as to those claims. Upon granting the Motion for Leave

---

[1] R. Doc. 52.

[2] R. Doc. 62.

[3] R. Doc. 63.

[4] R. Doc. 24.

[5] R. Docs. 51 and 53, respectively. These motions are collectively referred to as the "Motions to Amend Answer."

[6] Generally, a motion for leave to amend the pleadings is a nondispositive matter that may be ruled on by a magistrate judge pursuant to 28 U.S.C. § 636(b)(1)." *Cazares v. Morris*, No. 09-2168, 2011 WL 2414543, at *2 (D. Ariz. June 16, 2011) (citations omitted). However, because the decision regarding Plaintiff's Motion for Leave will determine

as to the claims against Swinford, there will no longer be complete diversity of citizenship between the parties, so it is further recommended that no decision on the merits be made with regard to the remaining relief requested in the Motion for Leave and that this matter be remanded to Nineteenth Judicial District Court for the Parish of East Baton Rouge, for lack of subject matter jurisdiction under 28 U.S.C. § 1332(a).

Additionally, the pending Motions to Amend Answer, filed by the PBF Defendants and Clean Harbors, will be terminated as moot, without prejudice to reurging in this Court if this Report and Recommendation is not adopted, or as appropriate in state court after remand.

## I.    BACKGROUND

The factual and procedural background of this case is discussed in the Court's prior Report and Recommendation, Opinion, Ruling, and Minute Entry/Telephone Conference Report and Order[7] and will not be reiterated here, except to the extent relevant to the Motion for Leave.

On March 31, 2018, while working for the Clean Harbor Defendants (defined below), Decedent sustained injuries from falling silica while cleaning a sand tank at an oil refinery in Chalmette, Louisiana.[8] The falling silica knocked Decedent's respirator off and left him buried under four to five feet of silica, unable to breathe.[9] Decedent was ultimately rescued and taken to a hospital, where he was placed on a ventilator.[10] About two weeks later, after he was declared

---

whether this Court continues to have diversity jurisdiction over this matter, the motion is dispositive such that a report and recommendation, rather than a ruling, is being issued. *See Vessell v. Wal-Mart Stores, Inc*., No. 07-228, 2008 WL 2700010, at *2, n. 2 (M.D. La. July 9, 2008).

[7] *See* R. Doc. 28 (Report and Recommendation recommending that Plaintiffs' Motion to Remand (R. Doc. 12) be denied and that Plaintiff's claims against John Sprafka, Wayne LaCombe, PBF Investments, LLC, and PBF Consultants, LLC be dismissed); R. Doc. 45 (Opinion adopting Report and Recommendation, except as to the recommended disposition regarding PBF Investments, LLC and PBF Consultants, LLC because those defendants had already been voluntarily dismissed); R. Doc. 47 (Ruling granting Clean Harbor's Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction (R. Doc. 17)); and R. Doc. 61 (Minute Entry/Telephone Conference Report and Order from Nov. 20, 2019 conference).

[8] R. Doc. 1-1, pp. 5-6.

[9] *Id*. at p. 6.

[10] *Id*.

brain dead,[11] Decedent was taken off life support and passed away.[12]

On August 10, 2018, Plaintiff, on behalf of Decedent's minor child, brought a wrongful death action for the child's damages and a survival action for the injuries sustained by Decedent against the PBF Defendants; (4) John Sprafka ("Sprafka"); (5) Wayne LaCombe ("LaCombe"); (6) Clean Harbors, Inc.; (7) Clean Harbors Environmental Services, Inc. (collectively, the "Clean Harbors Defendants"); (8) PBF Consultants, LLC ("PBF Consultants"); and (9) PBF Investments, LLC ("PBF Investments") (the "Petition").[13] The PBF Defendants, Sprafka, and Lacombe removed this matter on October 10, 2018 pursuant to 28 U.S.C. § 1332, asserting that the amount in controversy exceeds $75,000 exclusive of interest and costs and that the properly joined parties were completely diverse.[14] Although Sprafka and Lacombe were alleged to be citizens of Louisiana, as is Plaintiff,[15] the PBF Defendants contended that Sprafka and LaCombe were improperly joined because there was no possibility that Plaintiff could establish a cause of action against them in their managerial roles under Louisiana law.[16] In response, Plaintiff filed a Motion to Remand based on lack of subject matter jurisdiction.[17] The Court denied the Motion to Remand,

---

[11] *Id*.

[12] *Id*.

[13] R. Doc. 1-1.

[14] R. Doc. 1.

[15] Plaintiff alleged in her Petition that she is the mother and tutrix of S.C.R. and that she "resides and is domiciled in Louisiana." R. Doc. 1-1, p. 4, ¶ 7. This Court has previously explained that "'[s]ince most minors are legally incapable of forming the requisite intent to establish a domicile, their domicile is determined by that of their parents'" and that "'[w]hen determining a minor's domicile, courts look to the domicile of the minor's guardian if the minor lives with her guardian.'" *Champagne v. Parrish*, Civil Action No. 16-610, 2016 WL 7031331, at * 3 (M.D. La. Nov. 7, 2016) (internal citations omitted). Louisiana Civil Code article 41 provides that "[t]he domicile of an unemancipated minor under tutorship is that of his tutor. In case of joint tutorship, the domicile of the minor is that of the tutor with whom the minor usually resides, unless the court directs otherwise." Here, because Plaintiff has alleged that she is the tutrix of S.C.R., and that she is domiciled in Louisiana, the undersigned finds that the record contains sufficient allegations of Plaintiff's Louisiana citizenship. Regarding Sprafka and LaCombe, the PBF Defendants asserted in their Notice of Removal that both "are domiciled in and citizens of the State of Louisiana." R. Doc. 19, p. 3.

[16] R. Doc. 19, pp. 5-7.

[17] R. Doc. 12.

finding that Sprafka and LaCombe were improperly joined[18] because Plaintiff had not alleged sufficient facts to establish the personal liability of those non-diverse defendants.  PBF Consultants and PBF Investments were also voluntarily dismissed from the suit,[19] and Clean Harbors, Inc. was dismissed without prejudice for lack of personal jurisdiction.[20]

## II.    RENEWED MOTION FOR LEAVE AND THE PARTIES' ARGUMENTS

On November 1, 2019, the deadline to amend pleadings per the Court's Scheduling Order,[21] Plaintiff filed a renewed Motion for Leave,[22] requesting leave to file an amended complaint to provide additional factual information to support for her claims against existing defendants and to add new claims against new defendants, based on "recently discovered" information. Relevant here, Plaintiff seeks to re-allege claims against Sprafka and LaCombe and to bring claims against a new individual defendant, Swinford.[23] Although the proposed First

---

[18] *See*, R. Docs. 28 & 45.

[19] R. Doc. 32.

[20] R. Doc. 47.

[21] R. Doc. 50

[22] R. Doc. 52. This is Plaintiff's third attempt to amend her Petition. Plaintiff filed her first Motion for Leave to File First Amended Complaint on May 3, 2019, about two weeks after the Report and Recommendation was issued. R. Doc. 33. That motion was denied for failure to comply with Local Rule 10(a)(1). R. Doc. 34. On May 22, 2019, she filed a second Motion for Leave to File First Amended Complaint. R. Doc. 40. In that motion, Plaintiff again alleged that she "discovered additional factual information relevant to [her] claims," and she sought leave to amend her Petition to include "additional factual support for her claims against existing defendants," as well as add "new claims against additional defendants whose identify and involvement have been recently discovery." R. Doc. 40, p. 1. Notably, Plaintiff was attempting to add claims against "new defendant Guy Swinford," who she alleges was the "refinery employee…responsible for issuing work permits for the work at issue, personally observed the hazardous condition of the sand tanks, and—instead of addressing the hazard—personally approved the work permits and allowed the work to proceed." R. Doc. 40-1, p. 4; R. Doc. 40-3, at introductory paragraph and ¶¶ 26, 35. Because Plaintiff objected to the Report and Recommendation, triggering a de novo review by the district judge, the second motion was "denied without prejudice to [her] right to re-urge, if necessary, a motion to amend her complaint following the district judge's ruling on [the] Motion to Remand." R. Doc. 44.

[23] R. Doc. 52. Additionally, through the proposed First Amend Complaint, Plaintiff seeks to add factual information to her claims against the PBF Entity Defendants, "clarify" her claims against Clean Harbors, and add claims against the following new defendants: (1) Clean Harbors Industrial Services, Inc.; (2) Clean Harbors ES Industrial Services, Inc. (collectively, the "New Clean Harbor Entities"); (3) Veolia Environmental Services, LLC; (4) Veolia Energy Operating Services, LLC; (5) Veolia ES Industrial Services, Inc.; (6) Veolia Energy North America, LLC; (7) Veolia ES Technical Solutions, L.L.C.; (8) Veolia Facilities Management North America, LLC; (9) Veolia North America Regeneration Services, LLC; (10) Veolia ES Enterprise Solutions, LLC; (11) Veolia ES Special Services, LLC (collectively, the "Veolia Entities"); (12) Brown & Root Industrial Services, LLC ("Brown & Root"); and (13) Total Safety U.S. Inc. ("Total Safety"). R. Doc. 52-1, pp. 4-5; R. Doc. 52-3, ¶¶ 13-24. Like with Swinford, Plaintiff's

Amended Complaint does not adequately set out the citizenship of Swinford because Plaintiff only alleges residency, the parties agreed during the November 20, 2019 telephone conference that Swinford is a Louisiana citizen.[24]   The analysis in this Report focuses on whether Plaintiff should be permitted to add Swinford as a defendant because, if leave to amend is permitted, Swinford's Louisiana citizenship will destroy complete diversity, divest this Court of jurisdiction, and require this matter to be remanded, regardless of any additional claims.

Per the proposed First Amended Complaint, Plaintiff alleges:

> Guy Swinford was a safety representative for the PBF Defendants and Eric [an operator for PBF] was an operator for the PBF Defendants. Together, they were responsible for and had been delegated the task of evaluating the proposed work and approving permits for the specific work project at issue. Guy Swinford and Eric looked into the pressure vessel prior to work beginning on the day in question and personally saw the dangerous condition that existed—i.e., the remaining buildup of silica sand that was still caked in the pressure vessel. However, on behalf of the PBF Defendants, both Guy Swinford and Eric did nothing to address the hazard and instead personally approved the necessary permits. They instructed the Clean Harbors/Veolia crew to proceed with entering the pressure vessel to start cleaning out the silica sand despite the dangerous conditions both Guy Swinford and Eric were actually aware of.[25]

The proposed First Amended Complaint additionally sets forth that:

> Defendant Swinford was a Health and Safety Representative at the Chalmette Refinery at the time of the incident. Defendant Swinford had direct responsibility for and had been delegated the duty of overseeing the permitting process for confined spaces such as where the incident occurred. Defendant Swinford physically walked the unit and personally looked inside the pressure vessel in question before authorizing the permits to enter the pressure vessel. Defendant Swinford actually saw the silica build up and, based on his training, would have understood the risks with sending individuals inside the pressure vessel with the caked silica sand.

---

proposed amended complaint does not adequately allege the citizenship of the New Clean Harbor Entities, the Veolia Entities, Brown & Root, or Total Safety.

[24] R. Doc. 61. *See also* n.15, *supra*, regarding Sprafka and LaCombe's citizenship.

[25] R. Doc. 52-3, ¶ 34.

> Despite his actual and constructive knowledge of the dangerous conditions, Defendant Swinford authorized the work to go forward.[26]

In support of her request to add Swinford as a defendant, Plaintiff argues that the "liberal standard" in Fed. R. Civ. P. 15, as well as *Hensgens* factors, favor granting her Motion for Leave.[27] Regarding the *Hensgens* factors, Plaintiff claims (1) the purpose of the amendment is "not merely to defeat federal jurisdiction," (2) she "diligently" sought to amend her Petition after learning "additional information from others involved in Decedent's incident," (3) she will be prejudiced if she is forced to pursue her claims against Swinford in a separate proceeding, and (4) defendants' interest in a federal forum is "not as compelling" as her desire to have her claims against all defendants potentially liable for Decedent's injuries and death tried in a single forum.[28]

The PBF Defendants filed an opposition memorandum to the Motion for Leave, arguing that the Court "should reject [Plaintiff's] efforts to name Swinford as a defendant because she lacks viable claims against him and the factors articulated in *Hensgens*…counsel against granting leave to amend."[29] Specifically, the PBF Defendants contend the sole purpose of the proposed amended complaint is to defeat diversity, which is evidenced by the timing and Plaintiff's inability to state a viable claim against Swinford under *Canter*.[30] The PBF Defendants also contend that Plaintiff has presented "no evidence that she has been diligent" in her efforts to amend her Petition to add

---

[26] R. Doc. 52-3, ¶ 68.

[27] R. Doc. 52-1, pp. 6-12.

[28] *Id*. at pp. 10-12.

[29] R. Doc. 62. Defendants Clean Harbors Environmental Services, Inc. also filed an Opposition, wherein it "adopts the briefs and arguments filed by [the PBF Defendants] in Opposition to Plaintiff's Motion to Amend Petition to the extend not inconsistent with the position of [Clean Harbors]." R. Doc. 63.

[30] R. Doc. 62, pp. 4-7. The two assertions underlying the PBF Defendants' argument that Plaintiff does not have a viable claim against Swinford are (1) Plaintiff's proposed amended complaint does not relate back under Fed. R. Civ. P. 15(c) and (2) the Declaration of Swinford ("Declaration") (R. Doc. 62-1), which disclaims any involvement in the incident that injured and killed Decedent, corrects "misstated or omitted discrete facts" and shows that Plaintiff lacks a viable claim against Swinford. *Id*. These arguments are addressed below.

Swinford.[31] They claim Plaintiff will not be prejudiced if leave to amend is denied because other defendants are vicariously liable for Swinford and "it strains credulity to think that [Plaintiff] has any real intention of pursuing an individual employee to recover on her wrongful death claims, given the other parties already named in the suit."[32] Finally, the PBF Defendants claim that the "balance of the equities," including their right to a "properly invoked federal forum," weigh in favor of denying the Motion for Leave.[33]

Plaintiff filed a reply memorandum in support of her Motion for Leave,[34] reiterating her argument that all four *Hensgens* factors weigh in favor of permitting leave to add Swinford as a defendant.[35] Plaintiff contends that the PBF Defendants "do not dispute that Plaintiff has stated a claim against Swinford" but that they instead ask the Court to conduct a "mini-trial" to determine "the question of Swinford's liability."[36] Finally, Plaintiff contends that in the event the Court considers Swinford's Declaration, such Declaration is "untested and self-serving" and does not show that Plaintiff's "factual allegation[s] [are] indisputably false and easily disproved."[37]

## III.    APPLICABLE LAW AND ANALYSIS

### A.    Post-removal joinder of a non-diverse defendant

Federal Rule of Civil Procedure 15(a) provides that leave to amend "shall be freely given when justice so requires." The Fifth Circuit has strictly followed this rule, stating that "leave to amend should be granted liberally."[38] However, when an amendment after removal from state

---

[31] *Id.* at pp. 7-8.

[32] *Id*. at pp. 8-9.

[33] *Id*. at pp. 9-10.

[34] R. Doc. 68.

[35] *Id*. at pp. 2-9.

[36] *Id*. at pp. 4-5.

[37] *Id*.

[38] *Robertson v. Plano City of Texas*, 70 F.3d 21, 22 (5th Cir. 1995).

court would destroy subject matter jurisdiction, 28 U.S.C. § 1447(e) applies. Section 1447(e) provides, "If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court."  If diversity is the only basis for the court's subject matter jurisdiction and a district court permits joinder of a nondiverse defendant, it must remand the case to the state court.[39]

"The district court, when faced with an amended pleading naming a new nondiverse defendant in a removed case, should scrutinize that amendment more closely than an ordinary amendment."[40] When determining whether to allow joinder of a non-diverse party under § 1447(e), "justice requires that the district court consider a number of factors to balance the defendant's interests in maintaining the federal forum with the competing interests of not having parallel lawsuits."[41] The *Hensgens* factors include: (1) the extent to which the purpose of the amendment is to defeat diversity; (2) whether the plaintiff has been diligent in requesting an amendment; (3) whether the plaintiff will be prejudiced if the amendment is denied; and (4) any other factors bearing on the equities.[42] Applying these factors, the court in *Hensgens* held that the post-removal joinder of a non-diverse, non-indispensable party destroys diversity jurisdiction.[43]

Although the Fifth Circuit decided *Hensgens* before the enactment of § 1447(e), that court has subsequently approved the application of the *Hensgens* factors to a § 1447(e) case.[44] In *Cobb*, as in *Hensgens*, the Fifth Circuit concluded that, "post-removal joinder of non-diverse defendants

---

[39] *Cobb v. Delta Exports, Inc*., 186 F.3d 675, 677 (5th Cir. 1999) (citing 28 U.S.C. § 1447(e)).

[40] *Hensgens v. Deere & Co.,* 833 F.2d 1179, 1182 (5th Cir. 1987).

[41] *Id*.

[42] *Id*.

[43] *Id*.

[44] *See Cobb*, 186 F.3d at 677; *Tillman v. CSX Transport., Inc*., 929 F.2d 1023, 1029 (5th Cir. 1991); *see also Smith v. Lucas Tire Co., Inc*., No. 94-2215, 1995 WL 57295, at *2 (E.D. La. Feb. 10, 1995).

pursuant to Fed. R. Civ. P. 19 destroys diversity for jurisdictional purposes and requires remand, even when the newly joined defendants are not indispensable."[45] Thus, "it is technically immaterial" whether the non-diverse defendants sought to be added are indispensable or dispensable parties for the purposes of the analysis required under § 1447(e).[46]

Removal of this case was based upon diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1).[47] When original jurisdiction is based on diversity of citizenship, the cause of action must be between "citizens of different States" and the amount in controversy must exceed the "sum or value of $75,000, exclusive of interest and costs."[48] Subject matter jurisdiction must exist at the time of removal to federal court, based on the facts and allegations contained in the complaint.[49] "Although it is true that most subsequent events will not defeat jurisdiction, addition of a nondiverse defendant will."[50] The removal statute, 28 U.S.C. § 1441, is strictly construed and any doubt as to the propriety of removal should be resolved in favor of remand.[51] The removing party has the burden of proving federal diversity jurisdiction.[52]  Remand is proper if at any time the court lacks subject matter jurisdiction.[53]

---

[45] *Cobb*, 186 F.3d at 677.

[46] *Joseph v. Fluor Corp.*, 513 F. Supp. 2d 664, 670 (E.D. La. 2007) (*citing Cobb*, 186 F.3d at 680-81).

[47] R. Doc. 1, p. 2.

[48] 28 U.S.C. § 1332(a)-(a)(1).

[49] *St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998).

[50] *Hensgens*, 833 F.2d at 1181.

[51] *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281-82 (5th Cir. 2007).

[52] *Garcia v. Koch Oil Co. of Tex. Inc.*, 351 F.3d 636, 638 (5th Cir. 2003).

[53] *See* 28 U.S.C. § 1447(c).

**B.**   **Under the *Hensgens* analysis, Plaintiff should be allowed to file an amended complaint naming Swinford, a non-diverse defendant**

**1.**   **The primary purpose of the proposed amendment does not appear to be to defeat diversity**

When analyzing the first *Hensgens* factor, courts within the Fifth Circuit frequently look at whether the plaintiff knew or should have known the identity of the party to be joined and the facts underlying the claim against that party when the state court complaint was filed.[54] "Courts have held that a plaintiff's failure to join a non-diverse defendant to an action prior to removal when such plaintiff knew of a non-diverse defendant's identity and activities suggests that the purpose of the amendment is to destroy diversity jurisdiction."[55] "However, courts have also recognized that when a plaintiff states a valid claim against a defendant, it is unlikely that the *primary* purpose of bringing those defendants into a litigation is to destroy diversity jurisdiction."[56]

**a.**   **Timing**

Here, Plaintiff initially requested leave to amend her Petition on May 3, 2019,[57] about seven months after removal and two weeks after the Report and Recommendation that Plaintiff's Motion to Remand be denied. The PBF Defendants suggest that Plaintiff's "true intent to defeat diversity jurisdiction" may be "inferred" from this timing, despite noting in their opposition memorandum that Plaintiff advised the Court of her intention to amend the Petition prior to the issuance of the Report and Recommendation.[58] Taken out of context, this timing may appear to suggest that the motivation underlying Plaintiff's motion is to avoid federal jurisdiction. However, neither Defendants nor the record suggests that Plaintiff knew or should have known of Swinford's

---

[54] *See Tomlinson v. Allstate Indem. Co.*, No. 06-617, 2006 WL 1331541, at *3 (E.D. La. May 12, 2006); *Irigoyen v. State Farm Lloyds*, No., 03-324, 2004 WL 398553, at *3 (S.D. Tex. Jan. 5, 2004).

[55] *Schindler v. Charles Schwab & Co., Inc.*, No. 05-82, 2005 WL 1155862, at *3 (E.D. La. May 12, 2005).

[56] *Id*. (emphasis in original) (citing cases).

[57] R. Doc. 33.

[58] R. Doc. 62, pp. 4-5.

existence or the role he allegedly played in the underlying incident when she initially filed suit. Instead, Plaintiff states that she requested leave to amend after learning new information via allegations in a state court petition filed in the matter captioned *Leroy Brown, et al. v. PBFX Operating Company, LLC, et al.*, Suit No. 681,234, Nineteenth Judicial District Court for the Parish of East Baton Rouge (the "Brown & Lewis Petition") by "[o]ther workers who were injured in (but who survived) the same incident" as Decedent.[59] The Brown & Lewis Petition, which contains allegations about Swinford's involvement in the incident that injured and, ultimately, killed Decedent, was filed on March 28, 2019, about five weeks before Plaintiff first requested leave to add claims against Swinford.

Unlike the plaintiff in the *Campagna v. Averitt Exp., Inc.*[60] case cited by the PBF Defendants,  Plaintiff is not the person who was injured during the incident and does not have firsthand knowledge of the incident, who was involved, or what role each person/entity played. Plaintiff's explanation about requesting leave to amend within of five weeks of learning new information from the Brown & Lewis Petition is distinguishable from the facts in *Campagna.* [61]

Finally, Defendants contend that Plaintiff's filing of the Motion for Leave on the heels of this Court's decision "confirming subject matter jurisdiction for the first time…reveals [Ms. Plaintiff's] true purpose."[62] This argument is unavailing here as the *Quibodeaux* case cited by PBF

---

[59] R. Doc. 52-1, pp. 3-4. *See also* the Brown & Lewis Petition, which is in the record at R. Doc. 33-2 and R. Doc. 52-2.

[60] No. 99-1007, 1999 WL 386652 (E.D. La. June 10, 1999).

[61] Here, Plaintiff was Decedent's fiancé and is bringing claims on behalf of Decedent's minor child. Neither Plaintiff nor Decedent's child are in the same position with respect to knowledge of the facts and circumstances of the incident, or who was involved, as was the plaintiff in *Campagna*, who was the injured party.

[62] R. Doc. 62, pp. 4-5.

Defendants is distinguishable.[63] Accordingly, the timing alone does not suggest that the primary

purpose of the proposed amended complaint is to destroy diversity jurisdiction.

      **b.**     **Ability to State a Valid Claim Against a Non-Diverse Defendant**

          **1.**     **Plaintiff's proposed amended complaint states a claim against Swinford under *Canter***

Relatedly, courts within the Fifth Circuit recognize that "as long as the plaintiff states a

valid claim against the new defendant, the principal purpose is not to destroy diversity

jurisdiction."[64] "Under Louisiana law, an employee is personally liable if (1) the employer owes a

duty of care to a third person; (2) the employer delegated that duty to a defendant-employee; (3)

and the defendant-employee breached the duty through his own fault and lack of ordinary care."[65]

"However, a defendant-employee's 'general administrative responsibility' is insufficient to

impose personal liability."[66] "In order for a corporate officer to be held liable for purported

personal fault or negligence which arises out of a breach of duty, that person must have some

---

[63] In support of their argument, the PBF Defendants cite *Quibodeaux v. Nautilus Insurance Co.*, No. 10-739, 2012 WL 12919188, at *5 (E.D. Tex. Jul. 30, 2012), for the proposition that "seeking to add a nondiverse defendant shortly after removal but prior to any discovery, is further indication that the amendment is sought for the purpose of defeating diversity." *Id.* However, *Quibodeaux* is distinguishable for two reasons. First, Plaintiff did not seek to add a non-diverse "shortly after removal," as acknowledged by the PBF Defendants in their opposition memorandum. *See* R. Doc. 62, pp. 4, 8. Second, while it is not clear the extent to which "any discovery" has occurred here, Plaintiff did not request leave to amend based on information known to her prior to the filing of her Petition. Instead, Plaintiff claims she learned about Swinford's involvement based on information she learned well after she filed suit—namely, the Brown & Lewis Petition. *See also Francis v. Monroe*, No. 17-24, 2017 WL 4232963, at *5-6 (M.D. La. Sept. 24, 2017) (granting plaintiff's motion for leave to amend to name new non-diverse defendant filed about five weeks after learning of non-diverse defendant's potential liability). Additionally, the PBF Defendants timing argument is weakened by the fact that non-diverse defendants were named in the original Petition. There is no reason to believe that, if Plaintiff had known of Swinford's alleged involvement in the incident, she would not have named him initially as well, notwithstanding that he is a citizen of Louisiana

[64] *Valenti v. Coburn Supply Co.*, No. 19-571, 2020 WL 4679544, at *2 (M.D. La. Jul. 28, 2020). *See also McIntosh v. Costco Wholesale Corp.*, No. 18-9825, 2019 WL 3306532, at *2 (E.D. La. July 23, 2019) (citing *Herzog v. Johns Manville Prod. Corp.*, No. 02-1110, 2002 WL 31556352, at *2 (E.D. La. Nov. 15, 2002)).

[65] *Moore v. Manns*, 732 F.3d 454, 456-57 (5th Cir. 2013) (citing *Canter v. Koehring*, 283 So. 2d 716, 721 (La. 1973), *superseded on other grounds by statute,* La. R.S. § 23.1032 (1998)). *See also* R. Doc. 28, pp. 5-6.

[66] *Id.* (affirming district court's denial of motion to amend to add non-diverse employees and agreeing that plaintiff's "proffered amendment relied on the proposed parties' general responsibilities to oversee safety rather than on evidence of personal fault, as required to trigger individual liability under Louisiana law.").

personal contact with and responsibility towards the injured employee."[67] "A supervisor's knowledge of the dangers present 'could give rise to the personal duty contemplated in *Canter*.'"[68]

Per the proposed amended complaint, Plaintiff alleges Swinford was a "safety representative" for the PBF Defendants and the "Health and Safety Representative at the Chalmette refinery at the time of the incident."[69] She also alleges that Swinford and Eric, "an operator for the PBF Defendants," were responsible for and had been delegated the task of evaluating the proposed work and approving permits for the specific work project at issue.[70] Importantly, Plaintiff alleges that Swinford "looked into the pressure vessel prior to work beginning on the day in question and personally saw the dangerous condition that existed—*i.e.*, the remaining buildup of silica sand that was still caked in the pressure vessel."[71] Plaintiff alleges that Swinford "would have understood the risk with sending individuals inside the pressure vessel with the caked silica sand," based on his training.[72] She further alleges that despite his knowledge of the dangerous condition, gained from his look inside the pressure vessel, Swinford "did nothing to address the hazard and personally approved the necessary permits."[73] Further, Plaintiff alleges that Swinford "instructed

---

[67] *Esco v. Smith*, 468 So.2d 1169, 1175 (La. 1985). *See also*, *Canter*, 283 So. 2d at 721 ("personal liability cannot be imposed upon the…employee simply because of his general administrative responsibility for performance of some function of the employment. He must have a personal duty towards the injured plaintiff, breach of which specifically has caused the plaintiff's damages.").

[68] *Ford v. Elsbury*, 32 F.3d 931, 939 (5th Cir. 1994) (non-diverse plant manager properly joined in suit arising out of reactor explosion at a fertilizer plant where conflicting affidavits, viewed in a light most favorable to plaintiffs, raised a question of whether the plant manager had actual knowledge of a leak in the reactor prior to the explosion). *See also Valenti*, 2020 WL 4679544, at *3-5; *Creppel v. Apache Corp.*, No. 04-865, 2004 WL 1920932, at * 3 & n. 1 (E.D. La. Aug. 25, 2004).

[69] R. Doc. 52-3, ¶¶ 34, 68.

[70] *Id*.

[71] *Id*. *See also id.* at ¶ 68 (alleging Swinford "physically walked the unit and personally looked inside the pressure vessel in question…").

[72] *Id*. at ¶ 68.

[73] *Id*. at ¶¶ 34, 68.

13

the Clean Harbors/Veolia crew to proceed with entering the pressure vessel to start cleaning out the silica sand," despite being "actually aware" of the dangerous conditions inside the vessel.[74]

"This Court has previously held that, 'Under Louisiana law, an employee's personal involvement in causing the alleged injury *or the employee's knowledge of the dangers present* could give rise to the personal duty contemplated by *Canter.*'"[75] In the proposed amended complaint, Plaintiff specifically alleges that Swinford personally walked through the vessel with Decedent and an operator for the PBF Defendants (Eric), "actually saw" the silica buildup, and "would have understood the risks [of] sending individuals inside the pressure vessel with caked silica sand," based on his training.[76] Plaintiff also alleges that rather than addressing the risks posed by the silica buildup inside the vessel, Swinford "personally approved the necessary permits" to access the vessel and "instructed the Clean Harbors/Veolia crew to proceed with entering the pressure vessel to start cleaning out the silica."[77] Further, she alleges Swinford was personally responsible for inspecting the tanks or for supervising Clean Harbor's work.[78] These are sufficient allegations to establish a possibility of recovery against Swinford under *Canter.*[79]

---

[74] *Id.*

[75] *Mathes v. PNK (Baton Rouge) Partnership*, No. 17-392, 2017 WL 5762434, at *5 (M.D. La. Nov. 6, 2017) (quoting *Haynes v. Healthcare Services Group, Inc.*, No. 13-649, 2014 WL 2769080, at *3 (M.D. La. May 30, 2014)) (citing *Canter*, 283 So.2d at 721 (emphasis added)). *See also Marbury v. Cracker Barrel Old Country Store, Inc.*, No. 18-905, 2019 WL 4667340, at *5 (M.D. La. Sept. 6, 2019).

[76] *Id.* at ¶ 68.

[77] *Id.* at ¶ 34.

[78] *Id.* at ¶¶ 34, 68.

[79] The Fifth Circuit, this Court, and other district courts within the Circuit have found similar allegations sufficient to state a claim of *Canter* liability. *See, e.g., Ford*, 32 F.3d at 939; *Marbury,* 2019 WL 4667340, at *5-6 (finding plaintiff's allegations sufficient to state a claim under *Canter* where she alleged that non-diverse defendant was "made aware" of the allegedly dangerous condition, was responsible for correcting that condition, and left the condition unattended); *Mathes*, 2017 WL 5762434, at *5 (finding plaintiff's allegations sufficient to state a claim under *Canter* where she alleged that the non-diverse defendant caused the hazardous condition and had personal knowledge of it, but failed to remove the hazard); *Angeron v. Big Lots Stores, Inc.*, No. 20-1001, 2020 WL 2060353, at *3 (E.D. La. Apr. 29, 2020) (finding plaintiffs' allegations sufficient to state a claim under *Canter* where they allege that non-diverse store manager, to whom duty of care was delegated, "personally interacted with [one of the plaintiffs] before and after the incident[,] had personal knowledge of the defective structure that caused her injury[,]" and "was personally involved in creating the hazard, and that despite his actual knowledge failed to remedy the hazard."); *Fontenot v. Union Pacific Railroad Co.*, 374 F.Supp.3d 597, 604 (W.D. La. Mar. 20, 2019) (finding plaintiffs'

Once a plaintiff has stated a claim against a non-diverse defendant, defendants "must come forward with evidence to negate a possibility of liability against the non-diverse defendant."[80] The PBF Defendants contend that Plaintiff has "misstated…discrete facts," and they ask the Court to exercise its discretion to pierce the pleadings and consider Swinford's Declaration.[81] Specifically, the PBF Defendants argue that the Declaration "makes clear, [Swinford] had no involvement in and was not delegated any responsibility with respect to the work being performed by Mr. Plaintiff."[82] According to the Declaration, Swinford "was at the refinery that day to oversee a turnaround work in a wholly separate area of the refinery," and his "minimal involvement with the incident consisted of being notified by Chalmette Refinery personnel that the work would be occurring, given his role as Safety Advisor for Emergency Preparedness."[83] Finally, Swinford claims he "did not issue a work permit for this work, oversee or plan the work, look inside the pressure vessel, or direct anyone to do the work."[84]

The Fifth Circuit has explained that, "[a]lthough a court may pierce the pleadings and consider summary-judgment type evidence, the standard for finding improper joinder is not the

---

allegations were sufficient to state a claim under *Canter* where they alleged non-diverse defendant was a "Master of Track Maintenance 'personally responsible for all work, including work of subcontractors,'" whose acts of negligence, including "failing to discover defect in railroad vehicle, failing to warn [other defendants]…failing to warn the public, failing to restrict the public's access…[and] failing to determine the crossing was unreasonably dangerous," allegedly caused or contributed to plaintiffs' injuries.).

[80] *Randolph v. Wyatt*, No. 09-2020, 2010 WL 569753, at *5 (W.D. La. Feb. 11, 2010) (citing *Travis v. Irby*, 326 F.3d 644, 650-51 (5th Cir. 2003)). *See also Haynes*, 2014 WL 2769080, at *4 (quoting *Randolph, supra*). However, during the November 20 conference, the undersigned reminded the parties that the Fifth Circuit has "frequently cautioned the district courts against pretrying a case to determine removal jurisdiction...." and advised that the Court would not conduct a "mini-trial" on the truth of Plaintiff's allegations against Swinford when analyzing the Motion for Leave. R. Doc. 61, p. 4 (quoting *Carriere v. Sears, Roebuck & Co.*, 893 F.2d 98, 100 (5th Cir. 1990)).

[81] R. Doc. 62, pp. 6-7. *See also* R. Doc. 62-1.

[82] R. Doc. 62, p. 7. *See also* R. Doc. 62-1, ¶¶ 5-13.

[83] R. Doc. 62, p. 7. *See also* R. Doc. 62-1, ¶¶ 12-13.

[84] R. Doc. 62, p. 7. *See also* R. Doc. 62-1, ¶¶5-10.

summary judgment standard in which an absence in the plaintiff's proof alone can be fatal."[85] The Fifth Circuit in *Davidson* explained that:

> The examples of improper joinder based on "discrete and undisputed facts" outside the pleadings that *Smallwood* provides are consistent with this language requiring a defendant to "preclude" the possibility of recovery: evidence showing that "the in-state doctor defendant did not treat the plaintiff," that "the in-state pharmacist defendant did not fill a prescription for the plaintiff patient," that "a party's residence was not as alleged, or any other fact that easily can be *disproved* if not true."[86]

Although the district court may consider discrete and undisputed facts, the Fifth Circuit has "frequently cautioned the district courts against pretrying a case to determine removal jurisdiction...."[87] Here, Swinford's Declaration does not contain "discrete and undisputed facts" of the kind discussed in *Smallwood*—*i.e.*, facts that would allow the Court to conclude that Plaintiff has no possibility of recovery against Swinford. Instead, as Plaintiff points out, Swinford's Declaration "does not dispute that he worked at the Chalmette Refinery and was on site at relevant times."[88] Resolution of the factual disputes between the allegations against Swinford in the proposed amended complaint and his Declaration is inappropriate at this stage of these proceedings because determining what Swinford did or did not know or do the day of the incident would require this Court to improperly "pretry" this case to determine removal jurisdiction.[89] "[T]he inability to

---

[85] *Davidson v. Georgia-Pacific, L.L.C.*, 819 F.3d 758, 766 (5th Cir. 2016) (citing *Travis*, 326 F.3d at 650 n. 3). *See also Marbury*, 2019 WL 4667340, at *6.

[86] *Davidson*, 819 F.3d at 766-67 (citing *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 573-74 & n. 12 (5th Cir. 2004) (emphasis added in *Davidson*).

[87] *Carriere.*, 893 F.2d at 100. *See also Derise v. Regions Bank*, No. 18-406, 2018 WL 4228455, at *2 (W.D. La. Aug. 7, 2018) (quoting, in part, *Smallwood*, 385 F.3d at 573-74) ("Although the decision regarding the procedure necessary in a given case lies within the discretion of the district court, the Fifth Circuit has cautioned that, '[A] summary inquiry is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant.").

[88] R. Doc. 68, pp. 4-6. At a minimum, the Declaration shows Swinford was present on the day of the incident, aware of the work being performed by the Clean Harbors/Veolia crew, and involved in discussions about that work.

[89] Because the consideration of the statements in the Declaration is outside the scope facts that are appropriate for consideration at this stage of the proceedings, that information was not substantively considered in connection with this Report and Recommendation. *See also Derise*, 2018 WL 4228455, at *4 (W.D. La. Aug. 7, 2018) (refusing to consider a "self-serving" affidavit in deciding plaintiff's motion to amend to add non-diverse defendant); *Enviroshield*

16

make the requisite decision in a summary manner itself points to an inability of the removing party to carry its burden."[90] The Fifth Circuit has made clear that, "'any contested issues of facts and any ambiguities of state law must be resolved' in favor of remand."[91]

### 2. Plaintiff's claim against Swinford is not prescribed

In addition to the analysis of state law under *Canter*, whether Plaintiff's claim against Swinford is viable requires consideration of whether her claim is prescribed. Louisiana has a one-year prescriptive period for negligence claims, which begins to run from the day the injury or damage is sustained.[92] Here, the underlying incident occurred on March 31, 2018.[93] Plaintiff filed her first motion for leave seeking to add Swinford as a defendant on May 3, 2019,[94] over one year after the incident. However, Louisiana Code of Civil Procedure article 2324(C) provides, "Interruption of prescription against one joint tortfeasor is effective against all joint tortfeasors." Plaintiff alleges that the defendants are jointly liable.[95] This case is distinguishable from *Darr*,[96] relied on by the PBF Defendants. *Darr* involved a multi-car accident. The plaintiff in *Darr* originally sued only Conner, who re-ended Darr's vehicle and pushed it into a vehicle being driven by Colvin, and Conner's insurer. Less than a month after the case was removed, Darr sought to

---

*Technologies, LLC v. Lonestar Corrosion Services, Inc.*, No. 07-679, 2008 WL 11417821, at *3 (M.D. La. Jan. 31, 2008) (finding that defendants failed to carry their burden of showing that plaintiff has no reasonable possibility of recovery against non-diverse defendant, even though "defendants have submitted an affidavit of [the non-diverse defendant], in which he basically attests that he did not commit the acts of which he is accused," and noting that "[w]hether the plaintiff ultimately will prevail against defendant…is not the question in a fraudulent joinder analysis.").

[90] *Smallwood*, 385 F.3d at 574.

[91] *African Methodist Episcopal Church v. Lucien*, 756 F.3d 788, 793 (5th Cir. 2014), *quoting Cuevas v. BAC Home Loans Servicing, LP*, 648 F.3d 242. 249 (5th Cir. 2011).

[92] La. Civ. Code art. 3492.

[93] R. Doc. 1-1, ¶ 17.

[94] R. Doc. 33.

[95] R. Doc. 52-3, ¶ 7.

[96] *Darr v. Amerisure Ins. Co.*, No. 16-232, 2016 WL 5110267 (M.D. La. Aug. 31, 2016), *report and recommendation adopted*, No. 16-232, 2016 WL 5110480 (M.D. La. Sept. 20, 2016).

add Colvin, a non-diverse defendant. Although the Court concluded in *Darr* that the proposed amendment was prescribed on its face and relation back did not apply,[97] the parties in *Darr* did not argue prescription or relation back, nor did the plaintiff in that case allege that the non-diverse defendant was a joint tortfeasor with any of the originally named defendants. Here, the allegations in the proposed amended complaint are that the actions and inactions of various defendants (including the PBF Defendants and Swinford) led to Decedent's death. As such, the defendants are alleged to be joint tortfeasors so that interruption of prescription against one, interrupts prescription as to all under Louisiana law. Accordingly, Plaintiff's claim against Swinford does not appear to be prescribed.[98]

Based on the foregoing, taken together, the first *Hensgens* factor weighs in favor of granting Plaintiff's motion for Leave.

### 2.    Plaintiff was not dilatory in seeking leave to amend

The second *Hensgens* factor—whether the plaintiff was dilatory in seeking leave to amend—also weighs in favor of granting the Motion for Leave to Amend. In determining whether the plaintiff has been dilatory, "district courts often look to the amount of time that has passed between the filing of the original complaint and the amendment and the amount of time between the removal and the amendment."[99] "Generally a plaintiff is not dilatory in seeking to amend a

---

[97] *Darr*, 2016 WL 5110267, at *6.

[98] Because it appears that Plaintiff's claim against Swinford is not prescribed on its face, it is not necessary to address whether the proposed amended complaint relates back under Fed. R. Civ. P. 15(c). *See, e.g.*, *Thomas v. Great West Casualty Co.*, No. 18-586, 2019 WL 3211976 (W.D. La. June 3, 2019) (discussing in detail relation back under Fed. R. Civ. P. 15(c) and interruption of prescription under La. Civ. Code art. 2324, and noting that the "relation back articles do not apply in the case of a joint tortfeasor sued after prescription has otherwise expired."). Additionally, the PBF Defendant's argument that Swinford's presence in the suit is unnecessary because Plaintiff can recover against his employer (*see* R. Doc. 62, n.10) improperly conflates the test under *Canter*. "If the elements for imposing individual liability on the corporate employee are met, it does not matter that the corporation might also be liable." *Ford*, 32 F.3d at 936, *citing H.B. "Buster" Hughes, Inc. v. Bernard*, 318 So.2d 9, 12 (La. 1975).

[99] *Schindler*, 2005 WL 1155862, at *4.

complaint when no trial or pre-trial dates [have been] scheduled and no significant activity beyond the pleading stage has occurred."[100] However, "the analysis is different when the proposed amendment is to add nondiverse defendants shortly after removal based on federal diversity jurisdiction."[101] In some cases, "[a] delay of two months after the filing of the original complaint or almost thirty days after the notice of removal has been found dilatory."[102] Other courts, however, have concluded that a plaintiff was not dilatory in seeking leave to amend within the same time frame.[103]

Here, the time between the filing of the Petition and the first motion for leave is about nine months, while the time between removal and the first motion for leave is about seven months. While this delay seems to near the outer limits of what other courts have found to be non-dilatory under the "different" analysis suggested in *Galegos*,[104] it is not clear that analysis controls here, as Plaintiff did not request leave "shortly" after removal. Instead, Plaintiff first requested leave to amend her Petition to add claims against Swinford on May 3, 2019, about five weeks after she claims she learned new information suggesting she has a claim against Swinford (March 28, 2019).

---

[100] *Boyce v. CitiMortgage, Inc.*, 992 F. Supp. 2d 709,720 (W.D. Tex. 2014) (quotation and citation omitted).

[101] *Gallegos v. Safeco Ins. Co. of Indiana*, 2009 WL 4730570, at *4 (S.D. Tex. Dec. 7, 2009).

[102] *Id.*; *See Irigoyen v. State Farm Lloyds*, 2004 WL 398553, at *4 (S.D. Tex. Jan. 5, 2004).

[103] *See Schindler*, 2005 WL 1155862, at *4 (holding that the plaintiff was not dilatory when she filed the motion to amend a month and a half after she filed her state court petition and less than thirty days after removal to federal court); *Johnson v. Sepulveda Props., Inc.*, 1999 WL 728746, at *3 (E.D. La. Sept. 16, 1999) (amendment sought two months after state court petition filed held not dilatory); *Holcomb v. Brience, Inc.*, 2001 WL 1480756, at *2 (N.D. Tex. Nov. 20, 2001) (amendment two months and one week after state court filing and one month and one week after removal held not dilatory). *See also McNeel v. Kemper Cas. Ins. Co.*, 2004 WL 1635757, at *3 (N.D. Tex. Jul. 21, 2004) (amendment five months after filing of state court petition and six weeks after removal held not dilatory); *Vincent v. East Haven Ltd. P'ship*, 2002 WL 31654955, at *3 (E.D. La. Nov. 20, 2002) (amendment five months after state court filing and six weeks after removal held not dilatory).

[104] *See, e.g., Thomas*, 2019 WL 3211976, at * 4 (finding that plaintiff was dilatory when she sought to amend one year after her state court petition was originally filed, eleven months after removal, and three months after the Rule 26(f) report, which raised the to-be-added defendant's fault for the first time, was filed, but ultimately granting plaintiff's motion for leave to amend after consideration of all four *Hensgens* factors); *Salvation Army v. Union Pacific Railroad, Inc.*, No. 16-347, 2017 WL 3528903 (W.D. La. Mar. 8, 2017) (finding that plaintiffs were not dilatory when they filed a motion to amend "more than ten months" after they originally filed their petition in state court, despite "some significant activity" beyond the pleadings stage having occurred.).

19

A five-week delay between the filing of the Brown & Lewis Petition by Decedent's co-workers, which named Swinford as a defendant, and the Motion for Leave does not suggest that Plaintiff was dilatory.

Regardless, this case is still in the early stages, and no significant activity beyond the pleadings stages has occurred.[105] Additionally, Plaintiff filed her Motion for Leave within the deadlines set in the Court's Scheduling Order. This also suggests that Plaintiff has not been dilatory in requesting leave.[106] Accordingly, the second *Hensgens* factor weighs in favor of granting the Motion for Leave to Amend.

### 3. Plaintiff will be prejudiced by denying leave to amend

The third *Hensgens* factor considers whether the plaintiff will be prejudiced if leave to amend is denied. This factor also weighs in favor of granting the Motion for Leave. "Considerations of cost, judicial efficiency and potentially inconsistent results weigh in favor of not requiring [Plaintiff] to prosecute separate suits in two forums when both arise under the same set of facts."[107] The PBF Defendants assert that Plaintiff will not be prejudiced and can obtain full relief without the presence of Swinford because the PBF Defendants can satisfy any judgment that

---

[105] *Compare Salvation Army*, 2017 WL 3528903, at *10 (finding the second *Hensgens* factor weighed in favor of granting leave to amend, despite "some significant activity" beyond the pleadings stage having occurred, including a prior report and recommendation and ruling on the issue of improper joinder, plus "[d]efendants' filing of a dispositive motion to dismiss which was fully briefed.").

[106] As noted by the *Thomas* court, "*Hensgens*' seemingly incompatible treatment of time delays—[places plaintiffs in] the proverbial 'Catch-22.' On one hand, if the plaintiff seeks to amend too soon after the remand, he is at risk of a finding that he is seeking to improperly defeat diversity jurisdiction. On the other hand, the plaintiff is also at risk for seeking to amend too late, at the risk of being deemed dilatory." 2019 WL 3211976, at *4. Considering this "Catch-22," the *Thomas* court weighed the equities under *Hensgens* factor four and determined this "discrepancy is best resolved by resort of an analysis for prejudice." *Id*. In conducting the same analysis, the PBF Defendants will not be prejudiced, as this case is still in its early stages.

[107] *Porter v. Times Group*, No. 16-121, 2016 WL 8257692, at * 6 (M.D. La. No. 4, 2016), *report and recommendation adopted*, 2017 WL 628296 (M.D. La. Feb. 15, 2107) (citing *Joseph v. Fluor Corp.*, 513 F. Supp. 2d 664, 670 (E.D. La. 2007)).

she is awarded.[108] Like other courts in this circuit, this Court "decline[s] to force [Plaintiff] to

pursue only [certain] defendant[s] in this forum when [she] has a potentially viable claim against

others, as well."[109] Because Plaintiff has alleged that the PBF Defendants, Swinford, and others

are both individually and jointly liable, the PBF Defendants and Swinford "properly belong in the

same proceeding."[110] Further, if Plaintiff were forced to sue Swinford in a separate suit, "not only

would that suit likely be prescribed under Louisiana's one-year prescriptive period for personal

injury actions, but a separate suit (if allowed to proceed) risks the possibility of inconsistent

judgments regarding the percentages of fault attributable to [all defendants]."[111]

### 4.    The consideration of other equitable factors is neutral

The final *Hensgens* factor requires the Court to consider "other equitable factors" in

determining whether to allow plaintiff leave to amend. "Although equitable factors include

whether granting leave to amend would deprive a defendant of a properly invoked federal forum

and…would result in parallel state court proceedings, these factors are likely to be present

whenever a plaintiff in a removed case seeks to add a nondiverse defendant."[112]  In addition, these

factors have already been analyzed in the consideration of the first three *Hensgens* factors.  Since

---

[108] R. Doc. 62, p. 8-9 (arguing that that "there has been [no] contention that any of the PBF Defendants are unable to satisfy a judgment, and it strains credulity to think that [Plaintiff] has any real intention of pursuing an individual employee to recover on her wrongful death claims, given the other parties named in the suit.").

[109] *Lacy v. ABC Ins. Co.*, No. 95-3122, 1995 WL 688786, at *3 (E.D. La. Nov. 17, 1995). *See also Porter*, 2016 WL 8257692, at *6;  *Mergist v. Wal-Mart Stores, Inc.*, No. 6-138, 2016 WL 3648262, at *5 (M.D. La. June 9, 2016) (allowing plaintiff to join non-diverse defendants against whom she had viable claims), *report and recommendation adopted*, 2016 WL 3647623 (M.D. La. June 30, 2016).

[110] *Lacy*, 1995 WL 688786, at *3.

[111] *Thomas*, 2019 WL 3211976, at *4.

[112] *Gallegos*, 2009 WL 4730570 at *5 (citing *Smith v. Robin Am., Inc.*, 2009 WL 2485589, at *6 (S.D. Tex. Aug. 7, 2009)); *Tomlinson v. Allstate Indem. Co.*, 2006 WL 1331541, at *6 (E.D. La. May 12, 2006)). While the PBF Defendants' "right to litigate in a federal forum…is not an insignificant consideration," *Salvation Army*, 2017 WL 3528903, at *11, because Plaintiff's claims "are based on state law, there is no reason to anticipate that the state court would not or could not make fair determinations on the matters at issue." *Id*.

the parties have not pointed to any additional equitable factors beyond these considerations, the fourth *Hensgens* factor is neutral.

Based on the four-factor analysis set forth in *Hensgens*, Plaintiff should be allowed to file an amended complaint naming Swinford, a non-diverse defendant. The primary purpose of the proposed amendment is not to defeat federal jurisdiction. Plaintiff was not dilatory in naming Swinford as a defendant. Plaintiff will be prejudiced if the amendment is denied, and neither party has presented additional equitable considerations. The balance of the competing interests and equities in this case weigh in favor of granting Plaintiff's Motion for Leave with regard to adding Swinford.

      **C.**    **All Remaining Requests for Relief by Any Party Should Be Terminated if the Court Lacks Subject Matter Jurisdiction**

Because it is recommended that Plaintiff be permitted to add Swinford as a defendant, which destroys complete diversity and this Court's subject matter jurisdiction, it is not necessary to address whether Plaintiff may reassert claims against Sprafka and LaCombe, after they were previously found to be improperly joined. For the same reasons, it is not necessary to address whether Plaintiff may assert claims against the New Clean Harbor Defendants and/or the Veolia Entities or to decide the Motions to Amend Answer, filed by the PBF Defendants and Clean Harbor. Rather than a determination on the merits, those motions (and the remaining relief sought in the Motion for Leave) will be terminated as moot, subject to the ability to re-urge those motions if this Report and Recommendation is not adopted, or as appropriate in state court after remand.

## V.    RECOMMENDATION

**IT IS RECOMMENDED** that the Motion for Leave to Amend,[113] filed by Plaintiff, Jeprece Roussell, on behalf of and as tutrix for S.C.R., the minor child of decedent Kierston Roussell, be **GRANTED** as to the claims against Guy Swinford only.

**IT IS FURTHER RECOMMENDED** that all remaining relief sought in the Motion for Leave to Amend be **TERMINATED AS MOOT** without prejudice to the ability to re-urge same if this Report and Recommendation is not adopted, or as appropriate in state court after remand; and that this matter be **REMANDED** to the Nineteenth Judicial District Court for the Parish of East Baton Rouge.

Based on this Report and Recommendation, **IT IS ORDERED** that the Motion for Leave to File Amended Answer,[114] filed by the PBF Defendants, and the Opposed Motion for Leave to File Amended Answer,[115] filed by Clean Harbors, be **TERMINATED AS MOOT** without prejudice to the ability to re-urge same if this Report and Recommendation is not adopted, or as appropriate in state court after remand.

Signed in Baton Rouge, Louisiana, on September 18, 2020.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[113] R. Doc. 52.

[114] R. Doc. 51.

[115] R. Doc. 53.